UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

YALE-NEW HAVEN HOSPITAL, INC.        :

    Plaintiff,                      :          CIVIL ACTION NO.

    v.                              :

THE UNITED STATES OF AMERICA,        :

    Defendant.                      :

## COMPLAINT

Plaintiff Yale-New Haven Hospital, Inc. ("YNHH"), by its undersigned attorneys, alleges as follows for its complaint against the United States of America.

## NATURE OF ACTION

1. This is an action arising under the internal revenue laws of the United States for the recovery of Federal Insurance Contributions Act ("FICA") taxes erroneously paid by YNHH and interest thereon for the quarterly periods in the taxable years ended December 31, 1995, December 31, 1997, December 31, 1999, December 31, 2000, December 31, 2001, December 31, 2002, December 31, 2003, and December 31, 2004 and for the period January 1, 2005 through March 31, 2005.

## PARTIES

2. YNHH is a nonprofit corporation organized and existing under the laws of the State of Connecticut. For the years at issue in this complaint and thereafter,

YNHH's principal place of business has been at New Haven, Connecticut. YNHH's taxpayer identification number is 06-0646652.

3. Defendant is the United States of America.

## JURISDICTION

4. Jurisdiction is proper in this Court by virtue of 28 U.S.C. §§ 1340 and 1346(a)(1) and 26 U.S.C. §§ 7402, 7422, and 6532.

5. Venue is proper in this Court by virtue of 28 U.S.C. § 1402.

## BACKGROUND FACTS

6. YNHH is a 944-bed tertiary referral center which includes Smilow Cancer Hospital at Yale-New Haven, the 201-bed Yale-New Haven Children's Hospital and the 76-bed Yale-New Haven Psychiatric Hospital. YNHH is the primary teaching hospital of Yale University School of Medicine ("YSM"), and has a long history as a leader in medical education.

7. YNHH and YSM have been affiliated since YNHH's founding in 1826. YNHH and YSM are components of an academic medical center that have earned national and international reputations for teaching, research, and clinical services. YNHH and YSM share a common mission to further undergraduate and graduate medical education, medical research, and clinical care of patients, including indigent patients, with both YNHH and YSM providing personnel, facilities, and support to further this common mission.

8. Through the academic medical center that it established with YSM, YNHH conducts residency programs that provide post-graduate training in various fields of

2

medicine. Participants in the programs are referred to as residents or fellows (together, "Residents").

9. YNHH qualifies as a school, college, or university within the meaning of 26 U.S.C. § 3121(b)(10).

10. The Residents at YNHH are students who are enrolled and regularly attend classes at YNHH within the meaning of 26 U.S.C. § 3121(b)(10).

11. During the years 1995 through 2005, YNHH conducted residency programs in approximately 65 (depending on the year) departmental specialty and subspecialty fields of medicine. These residency programs were generally three to seven years in length and accredited by the Accreditation Council for Graduate Medical Education ("ACGME") and by the Residency Review Committees ("RRCs") responsible for each medical specialty program. The school year runs from July 1st to June 30th of the following year.

12. Each of the residency programs conducted by YNHH consisted of a formal and structured educational program.

13. Residents were supervised by faculty members of YNHH and YSM when treating patients.

14. YNHH and YSM faculty determined the Residents' duty hours and had the sole authority to direct and control the actions of the Residents. YNHH had the sole authority to discipline or dismiss Residents.

15. Upon completion of a residency program, the Residents received a diploma certifying that they had completed an accredited residency program. Completion of an accredited residency program is required for Residents to be eligible for medical specialty board certification.

16. Residents received an annual stipend in an amount determined by YNHH.

17. For its taxable year 1995, YNHH timely filed Forms 941, Employer's Quarterly Federal Tax Return, with the Internal Revenue Service in respect of wages paid to the Residents and paid the taxes shown thereon.

18. For its taxable year 1997, YNHH timely filed Forms 941, Employer's Quarterly Federal Tax Return, with the Internal Revenue Service in respect of wages paid to the Residents and paid the taxes shown thereon.

19. For its taxable year 1999, YNHH timely filed Forms 941, Employer's Quarterly Federal Tax Return, with the Internal Revenue Service in respect of wages paid to the Residents and paid the taxes shown thereon.

20. For its taxable year 2000, YNHH timely filed Forms 941, Employer's Quarterly Federal Tax Return, with the Internal Revenue Service in respect of wages paid to the Residents and paid the taxes shown thereon.

21. For its taxable year 2001, YNHH timely filed Forms 941, Employer's Quarterly Federal Tax Return, with the Internal Revenue Service in respect of wages paid to the Residents and paid the taxes shown thereon.

22. For its taxable year 2002, YNHH timely filed Forms 941, Employer's Quarterly Federal Tax Return, with the Internal Revenue Service in respect of wages paid to the Residents and paid the taxes shown thereon.

23. For its taxable year 2003, YNHH timely filed Forms 941, Employer's Quarterly Federal Tax Return, with the Internal Revenue Service in respect of wages paid to the Residents and paid the taxes shown thereon.

24. For its taxable year 2004, YNHH timely filed Forms 941, Employer's Quarterly Federal Tax Return, with the Internal Revenue Service in respect of wages paid to the Residents and paid the taxes shown thereon.

25. For the period of January 1, 2005 through March 31, 2005, YNHH timely filed a Form 941, Employer's Quarterly Federal Tax Return, with the Internal Revenue Service in respect of wages paid to the Residents and paid the taxes shown thereon.

26. The taxes collected by Defendant at issue are FICA taxes paid by YNHH and withheld by YNHH from wages paid to its Residents as described in paragraphs 17 through 25, inclusive.

27. The Residents' wages are entitled to exemption from FICA tax under 26 U.S.C. § 3121(b)(10). *See, e.g., United States v. Memorial Sloan-Kettering Cancer Center*, 563 F.3d 19 (2d Cir. 2009); *United States v. Mount Sinai Medical Center of Florida, Inc.*, No. 02-22715-CIV, 2008 WL 2940669 (S.D. Fla. July 28, 2008).

28. All amounts paid as FICA taxes by YNHH with respect to wages paid to Residents in the taxable years 1995 through 2004 and during the period of January 1, 2005 through March 31, 2005 were erroneously paid.

29. YNHH timely filed a claim for refund of the employer's and the employees' shares of FICA taxes assessed on its Residents' wages for all quarters ending during the 1995 taxable year with the Internal Revenue Service.

30. YNHH timely filed a claim for refund of the employer's and the employees' shares of FICA taxes assessed on its Residents' wages for all quarters ending during the 1997 taxable year with the Internal Revenue Service.

31. YNHH timely filed a claim for refund of the employer's and the employees' shares of FICA taxes assessed on its Residents' wages for all quarters ending during the 1999 taxable year with the Internal Revenue Service.

32. YNHH timely filed a claim for refund of the employer's and the employees' shares of FICA taxes assessed on its Residents' wages for all quarters ending during the 2000 taxable year with the Internal Revenue Service.

33. YNHH timely filed a claim for refund of the employer's and the employees' shares of FICA taxes assessed on its Residents' wages for all quarters ending during the 2001 taxable year with the Internal Revenue Service.

34. YNHH timely filed a claim for refund of the employer's and the employees' shares of FICA taxes assessed on its Residents' wages for all quarters ending during the 2002 taxable year with the Internal Revenue Service.

35. YNHH timely filed a claim for refund of the employer's and the employees' shares of FICA taxes assessed on its Residents' wages for all quarters ending during the 2003 taxable year with the Internal Revenue Service.

36. YNHH timely filed a claim for refund of the employer's and the employees' shares of FICA taxes assessed on its Residents' wages for all quarters ending during the 2004 taxable year with the Internal Revenue Service.

37. YNHH timely filed a claim for refund of the employer's and the employees' shares of FICA taxes assessed on its Residents' wages for the period of January 1, 2005 through March 31, 2005 with the Internal Revenue Service.

38. The estimated amounts of erroneously paid FICA taxes claimed by YNHH in the refund claims described in paragraphs 29 through 37, inclusive, are as follows:

| Taxable Year Ending | Refund Claimed |
|---|---|
| December 31, 1995 | $2,004,530 |
| December 31, 1997 | $2,034,900 |
| December 31, 1999 | $2,733,184 |
| December 31, 2000 | $2,863,038 |
| December 31, 2001 | $3,086,525 |
| December 31, 2002 | $3,344,596 |
| December 31, 2003 | $3,576,424 |
| December 31, 2004 | $3,672,868 |
| December 31, 2005* | $1,039,770 |

(* Estimate for the period of January 1, 2005 through March 31, 2005)

39. YNHH is permitted to recover the Residents' portion of the overpaid FICA tax at issue (*see* 26 U.S.C. § 3101(a) and (b)) on behalf of those Residents who consent to that recovery.

40. The IRS has not refunded or credited any part of YNHH's portion of the overpaid FICA tax sought by YNHH's claims for refund and by this action, and more than six months have elapsed since each of the refund claims was filed. Upon information and belief, the IRS has not refunded or credited any part of the Residents' portion of the overpaid FICA tax sought by YNHH's claims for refund and by this action.

41. YNHH is the sole owner of the claims asserted herein for the employer's share of FICA taxes and has made no transfer or assignment thereof. YNHH is permitted by law to recover the employee's share of FICA taxes on behalf of Residents who consent to recovery.

## COUNT ONE

**(Claim for Refund of FICA Taxes Paid On Wages Exempt Pursuant to 26 U.S.C. § 3121(b)(10))**

42. YNHH repeats and incorporates by reference the allegations in Paragraphs 1 through 41 in their entirety as if fully set forth herein.

43. Pursuant to 26 U.S.C. § 3121(b)(10), wages paid by a school, college, or university to a student enrolled and regularly attending classes at that school, college, or university are exempt from FICA taxes.

44. At all relevant times, YNHH qualified as a school, college, or university within the meaning of 26 U.S.C. § 3121(b)(10).

45. When employed and paid wages by YNHH, the Residents were students who were enrolled and regularly attending classes at YNHH within the meaning of 26 U.S.C. § 3121(b)(10).

46. YNHH withheld and paid the employer's and employee's share of FICA taxes on wages paid to the Residents. Pursuant to 26 U.S.C. § 3121(b)(10), the wages YNHH paid to the Residents were exempt from FICA taxes and the taxes withheld and paid thereon constitute an overpayment.

47. YNHH timely filed refund claims (the "Refund Claims") for the employer's and employee's share of FICA taxes withheld and paid in respect of the Residents for all quarters ending during the period January 1, 1995 through March 31, 2005.

48. The IRS has never notified YNHH that is has disallowed all or part of the Refund Claims, and more than six months have elapsed since each of the Refund Claims was filed.

49. YNHH, on its own behalf and on behalf of Residents who consent, is entitled to a refund of FICA taxes for the above-referenced taxable years plus interest as allowed by law.

**PRAYER FOR RELIEF**

WHEREFORE, YNHH demands judgment in its favor and against the United States:

(1) in the amount of $2,004,530 for the taxable year 1995, or such other amount as may be legally refundable, plus interest as provided by law;

(2) in the amount of $2,034,900 for the taxable year 1997, or other such amount as may be legally refundable, plus interest as provided by law;

(3) in the amount of $2,733,184 for the taxable year 1999, or other such amount as may be legally refundable, plus interest as provided by law;

(4) in the amount of $2,863,038 for the taxable year 2000, or other such amount as may be legally refundable, plus interest as provided by law;

(5) in the amount of $3,086,525 for the taxable year 2001, or other such amount as may be legally refundable, plus interest as provided by law;

(6) in the amount of $3,344,596 for the taxable year 2002, or other such amount as may be legally refundable, plus interest as provided by law;

(7) in the amount of $3,576,424 for the taxable year 2003, or other such amount as may be legally refundable, plus interest as provided by law;

(8) in the amount of $3,672,868 for the taxable year 2004, or other such amount as may be legally refundable, plus interest as provided by law;

(9) in the amount of $1,039,770 for the period of January 1, 2005 through March 31, 2005, or other such amount as may be legally refundable, plus interest as provided by law;

(10) for YNHH's costs, attorneys' fees, and such other and further relief to which it may be entitled.

THE PLAINTIFF
YALE-NEW HAVEN HOSPITAL, INC.

BY: _____
Patrick M. Noonan (ct00189)
Donahue, Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437
(203) 458-9168

Michael A. Schlanger
Shelli L. Calland
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC 20004-2401
202.662.6000 (telephone)
202.662.6291 (facsimile)
mschlanger@cov.com
scalland@cov.com

Andrew A. Ruffino
Pamela A. Carter
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018-1405
212.841.1000 (telephone)
212.841.1010 (facsimile)
aruffino@cov.com
pcarter@cov.com